IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**FELIX GUERRERO,**

    **Plaintiff,**

    v.

**DR. CARLOS PLANELL, et al.,**

    **Defendants.**

CIVIL NO. 15-1862 (PAD)

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Plaintiff Félix Guerrero alleges to have suffered damages as a result of defendants' handling and administration of various restaurants in which he had interests (Docket No. 16 at ¶ Y).[1] Defendants contend the action belongs to the corporations which owned and/or operated the restaurants, not to plaintiff (Docket No.40). Based on the record as has been presented here, the court agrees with defendants except as to one of the restaurants, El Isleñito. But in that instance, the evidence does not sustain liability. In consequence, the motion for summary judgment is GRANTED and plaintiff's claims DISMISSED. The counterclaim remains.

**I.   BACKGROUND**

In the main, the case involves six restaurants: Kitchen, Tonny's, Latitudes, La Atlántica, Café Calderón and El Isleñito. Kitchen closed in 2010; Latitudes closed in 2013; Tonny's went under in 2014; the opening of Café Calderón was delayed; and El Isleñito never opened for business (Docket No. 16 at ¶¶ G, K, N). According to plaintiff, the closing of Tonny's and delayed opening of Café Calderón resulted from breach of the Planell brothers' agreement to finance the

---

[1] Defendants are Dr. Carlos Planell, Dr. Israel Planell, and Mr. Israel Calderón; and their respective wives, legal conjugal partnerships and insurers.

projects. Id. at ¶¶ N, S. He alleges that he had to bring equipment from Latitudes and Kitchen to Tonny's (id. at ¶ Q); and to channel money from La Atlántica to finance Café Calderón (id. at ¶ S). He asserts Calderón misappropriated funds and equipment from La Atlántica (id. at ¶¶ W, X), and complains El Isleñito never opened to the public because Dr. Carlos Planell "backed up in his promise" to finance the restaurant. Id. at ¶ K. He further states defendants' role in the handling and administration of the businesses caused the damages for which he initiated the action. Id. at ¶ Z.² Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (Docket No. 40).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

---

² In the meantime, Dr. Carlos Planell counterclaimed, seeking payment of $111, 433.00 plus interest (Docket No. 23 at pp. 7-8).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial. LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013).

### III.  FINDINGS OF FACTS [3]

Defendants claim the action belongs to the corporations which owned and/or operated the restaurants that allegedly suffered the losses that plaintiffs seeks to recover (Docket No. 40 at p. 14). To this end, Latitudes was owned and operated by L&G Restaurants Inc., which belonged to plaintiff and an individual named Javier Muñoz (Docket No. 41-1 at p. 94). Kitchen was operated by San Juan Nightlife, Inc., created by plaintiff and another individual named Felix Guerrero. See, Docket No. 41, Defendants' "Statements of Uncontested Material Facts" ("SUMF") at ¶ 4.[4] Quick Player Services Corporation operated Tonny's; RRF Enterprises Corp. operated La Atlántica

---

[3] In carefully reviewing the record, the court has made an effort to determine the relevant facts of this dispute and recreate them in a coherent way. Plaintiff, however, has not controverted any of the materials facts in defendants' statements of uncontested facts in conformity with Local Rule 56(c), which requires that a party opposing a motion for summary judgment submit, with its opposition, a separate, short, and concise statement of material facts. The Rule further requires an opposing statement to admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Plaintiff's opposition does not conform to this requirement. To the contrary, his opposition is full of conclusory allegations without a single reference to the record and provides no *legal* reason as why defendants' request for summary judgment should not be granted. This is fatal to plaintiff's case as Local Rule 56(e) specifically states that "[f]acts contained in a supporting [. . .] statement of material facts, if supported by the record citations [ . . .], shall be deemed admitted unless properly controverted." Accordingly, the court will deem as admitted those facts which are supported by the record. See, Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)(noting that when "a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated"); Ruiz-Rivera v. Riley, 209 F.3d 24, 28 (1st Cir.2000)(warning that when the parties ignore the Local Rule, they do so at their own peril). By the same token, any other argument in support of the motion for summary judgment that was not properly controverted by plaintiff in his very general opposition to the request, is deemed waived. In the court's view, by standing silent to defendants' argument in support of the motion for summary judgment, he waived his right to object to defendants' motion. See, Snyder v. Collura, 812 F.3d 46, 49 (1st Cir. 2016)(quoting Butler v. Deutsche Bank Tr. Co. Ams., 748 F.3d 28, 36 (1st Cir.2014) for the proposition that a court may find argument waived when "the argument [the plaintiff] presented in his memorandum in opposition to the motion to dismiss did not focus on the [argument]").

[4] According to the Amended Complaint, this new restaurant was inaugurated in 2008, "following the Latitudes' success" (Docket No. 16 at ¶ C). This entity entered into an agreement with another entity called Natividad, Inc. for Kitchen's commercial space. SUMF at ¶ 5.

(SUMF at ¶¶ 10 and 23); and CHANTI Group, Corp. owned and operated Café Calderón. SUMF at ¶¶ 6, 7, and 19.

As for El Isleñito, plaintiff and another individual named Guillermo Ocasio came up with an idea to open the restaurant.[5] SUMF at ¶¶ 7 and 8. Even though plaintiff was not in charge of doing so, he testified at his deposition that a corporation was "probably" created for the operation of El Isleñito. SUMF at ¶¶ 9, 14. In the end: (i) there was never a conversation for codefendant Dr. Carlos Planell to become a full partner of El Isleñito (SUMF at ¶ 11); (ii) plaintiff does not know what participation of the business of El Isleñito he, Ocasio or Dr. Carlos Planell had (SUMF at ¶ 12); (iii) plaintiff does not know how much money Dr. Carlos Planell was obligated to invest at El Isleñito (SUMF at ¶ 13); and (iv) plaintiff was not depending on Dr. Carlos Planell to open El Isleñito, for he had other sources of investment and plenty of people interesting in investing in the restaurant (SUMF at ¶ 15). On these facts, entry of summary judgment is appropriate as a matter of law.

## IV.   DISCUSSION

As a general rule, a corporation and its shareholder are distinct juridical persons and are treated as such in contemplation of law. Pagán v. Calderón, 448 F.3d 16, 28 (1st Cir. 2006)(internal citations omitted). In terms of standing, "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name ... even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." Id. (citing In re Dein Host, Inc., 835 F.2d 402, 406 (1st Cir. 1987)); Bishay v. Am. Isuzu Motors, Inc., 404 F.3d 491, 495 (1st Cir.2005)(noting the general rule that only the

---

[5] According to plaintiff, he had the idea but Ocasio "brought the business" as he knew that the original owner of El Isleñito, Gil Beauchamp, was about to close the place (Docket No. 41-1 at pp. 48-49).

corporation, a receiver, or a stockholder acting derivatively in the corporation's name may sue to redress an injury to the corporation). This is true even if the shareholder is the sole owner of the corporation's stock. Pagán, 448 F.3d at 28 (internal citations omitted). Therefore, a stockholder of a corporation has no personal or individual right of action against a third person for damages that result indirectly to the stockholder because of an injury to the corporation. Ferrer v. Carricarte, 751 F.Supp. 1032, 1034 (D.P.R. 1990)(citing, In re Dein Host, Inc., 835 F.2d at 405-406; Alford v. Frontier Enterprises, Inc., 599 F.2d 483, 484 (1st Cir.1979); Kush v. American States Insurance Co., 853 F.2d 1380, 1383 (1st Cir. 1988)).[6]

On this reading, plaintiff does not have standing to maintain the action except as to El Isleñito. It is undisputed that corporate entities owned and/or operated Kitchen, Tonny's, Latitudes, La Atlántica, and Café Calderón.[7] From the Amended Complaint, any damages were sustained by the corporations due to defendants' refusal to invest in their operations, or on account of diversion of capital, equipment and employees.[8] Hence, the economic damages for which plaintiff has sued derive from his role as owner or member of those corporations.

---

[6] In Pagán, 448 F.3d at 28, the First Circuit also discussed the exceptions to this general rule (including, for example, (i) a case in which a shareholder sustains an injury that "is peculiar to him alone, and [that] does not fall alike upon other stockholders; (ii) where it is absolutely inconceivable that the corporation itself would pursue a claim for the misconduct, etc.). Because none of them are present or invoked here, the court will limit its discussion to the general rule.

[7] As noted above, plaintiff stated that a corporation was "probably" created to operate El Isleñito. The record, however, is devoid of specific information regarding that corporation's existence or identity. On that basis, viewing the evidence in the light most favorable to plaintiff, the court cannot conclude that a corporation was linked to the restaurant to the point of making it the appropriate party to claim for damages allegedly caused by the acts or omissions that plaintiff attributes to Dr. Carlos Planell.

[8] All in all, plaintiff alleges to have suffered economic damages due to defendants' "unjust and illegal actions in the handling and administration of the business of Café Calderón, El Isleñito, Tonny's and La Atlántica" (id. at ¶ Y). As for diversion of employees from some of the businesses, the claim might be construed as one of tortious interference with a contractual relationship. Nevertheless, the action requires that the diverted employees have been employed pursuant to fixed-term employment agreements. See, R.R. Isla Verde Hotel v. Howard Johnsons International, 121 Fed.Appx. 870, 871 (1st Cir. 2005)(noting that the first element of a tortious interference claim is existence of a contract for a fixed-term)(citing Dolphin Int'l of P.R. v. Ryder Truck Lines, 127 D.P.R. 869). Similarly, if what is affected is a profitable financial relationship rather than a contract, the action does not lie. Id. (citing Gen. Office Prods. v. Capen's Sons, Inc., 780 F.2d 1077, 1081 (1st Cir. 1986)). No qualifying contracts were alleged or shown to exist in this case. In any event, the action belongs to the employer, and plaintiff never identified himself as the employer of any of those employees. As the First Circuit stated in Pagán, 448 F.3d at 29, any injury based on how defendants' conduct impacted plaintiff's ownership interests "is merely derivative" of the injury allegedly inflicted to the corporate entities. Id. at n.3.

That plaintiff made a demand for emotional distress damages is insufficient to confer individual standing, for the facts do not show that the injury is anything but derivative. See, Pagán, 448 F.3d at 29 (rejecting emotional distress demand brought by stockholders of corporation asserting damages deriving from corporation's failure to receive loan). Having opted to own and/or operate the restaurants in corporate form, plaintiff "does not have a right to bring a direct action to redress any personal injury" arising from those corporate ventures. See, Ferrer, 751 F.Supp. at 1034 (so noting)(quoting Kush, 853 F.2d at 1384).

Finally, as regards El Isleñito the record does not sustain liability against Dr. Carlos Planell. Plaintiff could not state how much money Dr. Carlos Planell was obligated to invest. See, Ferrera v. Carpionato Corp., 895 F.2d 818, 821-822 (1st Cir. 1990)(affirming directed verdict against plaintiff, because lack of salary term and absence of any stated percentage in project participation and bonus sections of the agreement constituted omission of a material substantive term preventing recovery).[9] Moreover, plaintiff was not depending on Dr. Carlos Planell to open the restaurant. He had plenty of people that wanted to invest in the restaurant. So there is a gap in the causal chain, inasmuch as Dr. Planell was not necessary for the opening or operation of the restaurant. The asserted injury cannot be causally attributed to the challenged conduct. See, Malave-Félix v. Volvo Car Corp., 946 F.2d 967, 974 (1st Cir. 1991)(dismissing claim for lack of evidence that defendant was the proximate cause of plaintiff's injuries); Global ePoint, Inc. v. GTECH Corp., 58 F.Supp.3d 178, 192 (D.R.I. 2014)(summary judgment due to lack of proximate cause).

---

[9] *Cf. with* Bianchi-Montana v. Crucci-Silva, 720 F.Supp.2d 159, 164-165 (D.P.R. 2010)(denying motion to dismiss a breach of contract claim initiated by a plaintiff who alleged that he and the defendants entered into an agreement, pursuant to which plaintiff would manage the construction of a restaurant, and that in exchange for fifty thousand dollars' worth of his labor, he would be entitled to (1) twenty percent of the net profit of the restaurant, and (2) a management position at the restaurant with a monthly salary of four thousand dollars).

## V. CONCLUSION

For the reasons stated, defendants' motion for summary judgment is GRANTED, and plaintiff's claims DISMISSED. An order for the parties to submit the Joint Pretrial Conference Report as to the Counterclaim filed by Dr. Carlos Planell will follow.

Partial Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of December, 2016.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge
